DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Lori Roberts, appeals from the judgment of the Summit County Court of Common Pleas, which affirmed the decision of the Ohio Unemployment Compensation Review Commission ("Review Commission") to disallow Ms. Roberts' claim for unemployment compensation benefits. We affirm.
 I. {¶ 2} Ms. Roberts, a resident of Cuyahoga Falls, Ohio in Summit County, was employed as a server by Ken Stewart's Grille, since March 19, 1996. Ms. Roberts' last day of employment with this employer was November 7, 2001. In the course of her attempts to obtain unemployment compensation benefits for the week ending November 17, 2001, a hearing was held before the Review Commission, at which Ms. Roberts testified to the facts of the instant case. Ms. Roberts testified, that, in anticipation of starting new employment, on October 25, 2001, she submitted a letter of resignation with two weeks notice to the floor manager of Ken Stewart's Grille.[1] The floor manager was to submit the letter to the owner and operator of Ken Stewart's Grille, Ken Stewart.
 {¶ 3} Ms. Roberts further testified at this hearing that on October 26, 2001, she learned that the other job would not materialize, and that she attempted to revoke her resignation that same day. Specifically, Ms. Roberts stated that she attempted to approach Mr. Stewart at the restaurant that evening to speak with him, but that she was not able to actually speak with him. Additionally, Ms. Roberts stated that she did speak with the manager on duty that same evening "to affirm [her] employment[,]" and she "was given the okay to stay in his employment." Ms. Roberts also asserted that she spoke with the floor manager that evening, who told her that "everything was okay[;]" Ms. Roberts stated that she also gave the floor manager a handwritten note, which was to be delivered to Mr. Stewart. Ms. Roberts testified that this note stated that Ms. Roberts "wanted to talk [with] him[.]" Ms. Roberts further stated that the following week, she called Mr. Stewart and left a message stating that she wished to speak to him "about a change in th[e] two week notice" because she had not yet heard back from the owner. Ms. Roberts maintained that Mr. Stewart never returned her call. Additionally, Ms. Roberts asserted that on November 7, 2001, the day before the expiration of the two-week notice, Mr. Stewart informed Ms. Roberts that he was accepting her two-week notice of resignation.
 {¶ 4} On November 15, 2001, Ms. Roberts filed an application for determination of benefits rights, which was allowed. Thereafter, Ms. Roberts filed a first claim for benefits for the week ending November 17, 2001. On November 28, 2001, the Ohio Department of Job and Family Services ("ODJFS") disallowed this claim, finding that Ms. Roberts quit her job without just cause. Ms. Roberts filed an appeal, and on January 7, 2002, the ODJFS issued a director's redetermination affirming the prior determination.
 {¶ 5} In a letter dated January 28, 2002, Ms. Roberts' newly-retained counsel appealed to the ODJFS Bureau of Unemployment Compensation Benefits, requesting that the Bureau reverse the director's redetermination. In support of this appeal, Ms. Roberts contended that she is entitled to unemployment compensation benefits because she did not quit, but rather that she was discharged without just cause on November 7, 2001. The appeal was subsequently transferred to the Review Commission,[2] and a hearing was held on the matter. Thereafter, the Review Commission affirmed the director's redetermination. In a letter dated May 17, 2002, Ms. Roberts' counsel filed a request for review of the Review Commission's decision,[3] which the Review Commission disallowed.
 {¶ 6} On August 8, 2002, Ms. Roberts filed an administrative appeal with the Summit County Court of Common Pleas pursuant to R.C.4141.282(A)-(C), asserting that the Review Commission's decision "was unlawful, unreasonable, and against the manifest weight of the evidence." The trial court affirmed the Review Commission's decision, finding that "competent, credible evidence existed to support the finding of the [Review Commission] that appellant quit her work with Ken Stewart's without just cause. * * * The decision of the Review Commission is not against the manifest weight of the evidence[.]" This appeal followed.
 {¶ 7} Ms. Roberts timely appealed, asserting one assignment of error.
 II. Assignment of Error
"The common pleas court erred to the prejudice of appellant by affirming the decision of the review commission and failing to recognize that appellant had revoked her resignation before it was accepted by her employer."
 {¶ 8} In her sole assignment of error, Ms. Roberts avers that the common pleas court erred when it affirmed the decision of the Commission and did not recognize Ms. Roberts' revocation of her resignation. Specifically, Ms. Roberts contends that the common pleas court's judgment was unlawful, unreasonable, and against the manifest weight of the evidence. We disagree.
 A. {¶ 9} We initially discuss the appropriate standard of review. An interested party may appeal the review commission's decision on rehearing to the common pleas court of the county where the party is a resident or was last employed, pursuant to R.C. 4141.282(A)-(B). The court is to hear the appeal upon the record as certified and provided by the review commission. R.C. 4141.282(H). The court is only to reverse, vacate, modify, or remand the decision to the review commission if the court finds that the decision "was unlawful, unreasonable, or against the manifest weight of the evidence[.]" R.C. 4141.282(H). Otherwise, the court is required to affirm the review commission's decision. Id.
 {¶ 10} R.C. Chapter 4141 does not distinguish between the scope of review of a common pleas court and that of an appellate court with respect to review commission decisions. See R.C. 4141.282(H)-(I). Additionally, the Supreme Court of Ohio has confirmed that "there is no distinction between the scope of review of common pleas and appellate courts regarding `just cause' determinations under the unemployment compensation law." See Durgan v. Ohio Bur. of Emp. Servs. (1996),110 Ohio App.3d 545, 551, citing Tzangas v. Administrator, Ohio Bur. ofEmp. Servs. (1995), 73 Ohio St.3d 694, 696-97.
 {¶ 11} When reviewing a decision of the review commission regarding eligibility for unemployment compensation benefits, an appellate court is bound by the same limited scope of review as that required of the common pleas courts. Irvine v. State of Ohio Unemp.Comp. Bd. of Rev. (1985), 19 Ohio St.3d 15, 18. Thus, an appellate court may only reverse an unemployment compensation eligibility decision by the review commission if the decision is unlawful, unreasonable, or against the manifest weight of the evidence. Tzangas, 73 Ohio St.3d at 696. Also, this Court is required to focus on the decision of the review commission in such cases, rather than the decision of the common pleas court. Barilla v. Ohio Dept. of Job Family Servs., 9th Dist. No. 02CA008012, 2002-Ohio-5425, at ¶ 6, citing Tenny v. Oberlin College
(Dec. 27, 2000), 9th Dist. No. 00CA007661.
 {¶ 12} When reviewing a decision of the review commission, common pleas and appellate courts are precluded from making factual findings; the resolution of factual questions is chiefly within the review commissions' scope of review. Tzangas, 73 Ohio St.3d at 697; Irvine,19 Ohio St.3d at 17. Rather, the courts' role is to determine whether the decision of the review commission is supported by evidence in the certified record.Durgan, 110 Ohio App.3d at 551, citing Tzangas, 73 Ohio St.3d at 696;Irvine, 19 Ohio St.3d at 18, citing Kilgore v. Bd. of Rev. (1965),2 Ohio App.2d 69, 71. If the court finds that such support is found, then the court cannot substitute its judgment for that of the review commission. Durgan, 110 Ohio App.3d at 551, citing Wilson v. Unemp.Comp. Bd. of Rev. (1984), 14 Ohio App.3d 309, 310. However, the Supreme Court has noted that applying the same standard of review at both the common pleas and appellate court levels does not result in a de novo review standard. Tzangas, 73 Ohio St.3d at 697. "The fact that reasonable minds might reach different conclusions is not a basis for the reversal of the [review commission's] decision." Irvine, 19 Ohio St.3d at 18, citing Craig v. Bur. of Unemp. Comp. (1948), 83 Ohio App. 247, 260.
 {¶ 13} In its review of a decision regarding unemployment compensation, a common pleas or appellate court may also reverse the decision if it finds it to be against the manifest weight of the evidence. R.C. 4141.282(H). This Court applies the same standard in determining whether both criminal and civil judgments are against the manifest weight of the evidence.[4] Lagasse v. Yaeger, (Sept. 2, 1998), 9th Dist. No. 97CA006774. Therefore, in reviewing a civil judgment, an appellate court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." State v. Thompkins
(1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 14} This discretionary power is reserved for the exceptional case, where the judgment is "`so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice[.]'" Shepherd v.Freeze, 9th Dist. No. 20879, 2002-Ohio-4252, at ¶ 8, quoting Royerv. Bd. of Edn. (1997), 51 Ohio App.2d 17, 20. Additionally, it is important to keep in mind the limitation on an appellate court's assessment of a review commission decision, which precludes the court from making factual findings or weighing the credibility of witnesses.Tzangas, 73 Ohio St.3d at 696, citing Irvine, 19 Ohio St.3d at 18.
 {¶ 15} Moreover, "[e]very reasonable presumption must be made in favor of the [decision] and the findings of facts [of the review commission]." Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19; see, also, Long v. Hurles (1996), 113 Ohio App.3d 228, 233 (stating that the appellate court is to begin with the presumption that the trial court's findings of fact are correct). "[I]f the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." Karches, 38 Ohio St.3d at 19.
 B. {¶ 16} Employment relationships in Ohio are generally governed by the common law doctrine of employment at-will. Wiles v. Medina AutoParts, 96 Ohio St.3d 240, 2002-Ohio-3994, at ¶ 5. An employment relationship is presumptively at-will unless the facts and circumstances of a particular case indicate that the relationship is for a specific term. Allen v. Ethicon (S.D.Ohio 1996), 919 F. Supp. 1093, 1100. Under the employment at-will doctrine, a general or indefinite hiring is terminable at the will of either the employee or employer, unless otherwise agreed upon. Wiles at ¶ 5. Furthermore, an at-will employee in Ohio is subject to discharge at any time for any reason not contrary to law, with or without cause. Balbach v. Akron Metro. Hous.Auth. (Feb. 6, 1987), 9th Dist. No. 12292; Allen, 919 F. Supp. at 1100. See, also, Henkel v. Educ. Research Council (1976), 45 Ohio St.2d 249,254. No property right exists in the continuance of employment from day to day with no tenure, besides any requirement to pay the employee for a specified period actually worked by the employee; the employee has no legal right, and the employer no legal duty, to keep the employee in employment. Budinsky v. Universal Carloading Distrib. Co. (Feb. 15, 1937), 8th Dist. No. 15711. Furthermore, it has been said that a plaintiff's right in his or her employment, if any, must have been created by state law. Butler v. Wakeman (July 7, 1989), 6th Dist. No. H-88-39.
 {¶ 17} Under R.C. 4141.29, a party is entitled to unemployment compensation benefits if he or she quits with just cause or is discharged without just cause. See R.C. 4141.29(A) and (D)(2)(a); Bacalu v.Lorantffy Care Ctr. (Feb. 11, 1998), 9th Dist No. 18427. A claimant bears the burden to prove that he or she is entitled to unemployment compensation benefits under R.C. 4141.29, "including the existence of just cause for quitting work." Irvine, 19 Ohio St.3d at 16, citingShannon v. Bur. of Unemp. Comp. (1951), 155 Ohio St. 53, 59. The determination of what constitutes "just cause" within the context of unemployment compensation "necessarily depends upon the unique factual considerations of the particular case" and involves a concurrent analysis of the legislative purpose of the Unemployment Compensation Act, R.C.4141.01-4141.47 and 4141.99. Irvine, 19 Ohio St.3d at 17. It has long been recognized that the purpose of the Act is "to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault of hisown." (Emphasis added.) Id., quoting Salzl v. Gibson Greeting Cards,Inc. (1980), 61 Ohio St.2d 35, 39.
 {¶ 18} Traditionally, "just cause," in the statutory sense, means "that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." Irvine, 19 Ohio St.3d at 17, quoting Peyton v. Sun T.V. (1975), 44 Ohio App.2d 10, 12. See, also,Durgan, 110 Ohio App.3d at 549, quoting Tzangas, 73 Ohio St.3d at 697. Additionally, "just cause" for quitting one's job amounts to what "`an ordinarily intelligent person' would find to be a `justifiable reason for quitting, where that cause is related in a substantial way with a person's ability to perform in his employment[.]'" Bacalu, supra, quotingHenize v. Giles (1990), 69 Ohio App.3d 104, 111. The term "quit" connotes a "voluntary act by an employee not controlled by the employer." (Emphasis sic.) Henize, 69 Ohio App.3d at 111, citing Caudill v. AshlandOil Co. (1983), 9 Ohio Misc.2d 16, 17.
 {¶ 19} It has been held, that, in general, an employee who quits employment in order to accept other employment is deemed to have quit without just cause, and is therefore not eligible for unemployment benefits pursuant to R.C. 4141.29(D)(2)(a). Vinson v. AARP Found.
(1999), 134 Ohio App.3d 176, 178-79, citing Radcliffe v. ArtromickInternatl., Inc. (1987), 31 Ohio St.3d 40, 41. See, also, Cooper v. OhioBur. of Emp. Servs. (Feb. 14, 1979), 9th Dist. No. 9063 (agreeing with cases from other Ohio district courts of appeal which state that quitting to take another job is a voluntary act not connected with the work);Hirsch v. Bd. of Rev. (Nov. 12, 1987), 8th Dist. No. 52908.
 {¶ 20} R.C. 4141.46 mandates that the Unemployment Compensation Act be liberally construed. Additionally, it has been said that the Act is to be liberally construed in favor of the persons benefiting. Abatev. Wheeling-Pittsburgh Steel Corp. (1998), 126 Ohio App.3d 742, 748. However, it is important to keep in mind the purpose of the Act, as noted supra, which is to provide financial assistance to those without employment through no fault of their own. See Irvine,19 Ohio St.3d at 17. Additionally, the inquiry into just cause is a factual one, which reviewing courts are precluded from doing in these administrative appeals. Durgan, 110 Ohio App.3d at 551, citing Irvine,19 Ohio St.3d at 17.
 {¶ 21} In support of her sole assignment of error, Ms. Roberts argues that (1) her two-week notice to her employer was an "offer to enter into a two week term of employment with [her employer,]" and that "[t]his offer, like any other offer, required acceptance and a meeting of the minds to result in a binding agreement[;]" and (2) since she revoked her resignation, no "offer" of resignation existed for Mr. Stewart to accept, and that therefore she was discharged without just cause. To support her first argument, Ms. Roberts relies on the principles of contract law, and contends that since she revoked this "offer" prior to its acceptance by her employer, that this revocation terminated her employer's power of acceptance.
 {¶ 22} Initially, this Court points out that Ms. Roberts does not cite supporting authorities to substantiate her argument that a notice of resignation letter constitutes an offer within the context of contract law. An appellant bears the burden of affirmatively demonstrating the error on appeal. Angle v. W. Res. Mut. Ins. (Sept. 16, 1998), 9th Dist. No. 2729-M; Frecska v. Frecska (Oct. 1, 1997), 9th Dist. No. 96CA0086. Particularly, an appellant must provide citations to authorities supporting the arguments in his brief, as required by App.R. (16)(A)(7) and Loc.R. 7(A)(6). Angle, supra; Frecska, supra.
 {¶ 23} Furthermore, we observe that Ms. Roberts did not raise this argument to the Review Commission and did so for the first time on appeal to the common pleas court. It is well established, that, in order for an appellate court to consider an issue, the issue must have been preserved in the lower court. See Bd. of Health v. Trubiani (Dec. 16, 1998), 9th Dist. No. 2731-M, citing LeFort v. Century 21-Maitland Realty Co.
(1987), 32 Ohio St.3d 121, 123 (stating that a party must raise an issue before a trial court to properly preserve that issue for appeal and not result in a waiver of the issue). The doctrine of waiver has also been applied to administrative appeals. Brinkman v. State Liquor Control Comm.
(May 10, 1995), 3rd Dist. No. 12-94-5; Loyal Order of Moose Lodge No.1473 v. Liquor Control Comm. (1994), 95 Ohio App.3d 109, 114. Therefore, when an issue has not been raised and decided during the administrative process, the issue is waived and may not be raised for the first time on appeal to the common pleas court. See Stores Realty Co. v. Cleveland
(1975), 41 Ohio St.2d 41, 43; see, also, Kaltenbach v. Mayfield (Apr. 27, 1990), 4th Dist. No. 89-CA-10. "To allow a claimant or employer to raise an issue for the first time in an appeal to the court of common pleas would frustrate the statutory system for having issues raised and decided through the administrative process." Kaltenbach, supra. Since Ms. Roberts did not raise this argument before the Review Commission, this issue was not preserved for appeal. See Brinkman, supra.
 {¶ 24} We observe that in its judgment entry the common pleas court did address this argument. However, in light of the aforementioned, this Court will not address the argument during this appeal. Notwithstanding, we do note that it has been held that employment terminated on the giving of a specified notice is still employment at-will, and not employment for a specified term. See La FranceElectrical Construction Supply Co. v. Interntl. Bhd. of ElectricalWorkers, Local No. 8 (1923), 108 Ohio St. 61, 88. Specifically, where an employment agreement requires a written notice of the employee's intention to terminate employment, such a notice provision does not
"establish a term for the duration of [a] contract, but merely a period of convenient notice[,]" and the relationship between the employer and the employee remains at-will. Id. Thus, Ms. Roberts' contention that her letter of resignation constituted an offer or an invitation to her employer to enter into a two-week contractual relationship does not provide her with any more right to this employment, and therefore the argument does not have merit.[5]
 {¶ 25} To support her second argument regarding the revocation of her resignation, Ms. Roberts directs us to the decision in Davis v.Marion Cty. Engineer (1991), 60 Ohio St.3d 53. In Davis, the Supreme Court of Ohio held that a public employee may rescind a tender of resignation any time prior to its effective date, as long as the public employer has not formally accepted the resignation. Id. at 55. As seen inDavis, certain public employees in Ohio do have constitutionally and statutorily protected employment under the Ohio civil service laws. Id. However, since Ms. Roberts was not a public employee, the holding inDavis is inapplicable to the instant case, and therefore, we need not consider it in our analysis.
 {¶ 26} Furthermore, Ms. Roberts does not provide any authority to substantiate the notion that an at-will employee in the private sector in a similar situation as Ms. Roberts has any protections similar to those afforded civil service employees, or that a private employer is bound by an at-will employee's revocation of his or her resignation. As we have mentioned in our discussion of Ms. Roberts' first argument, an appellant bears the burden of affirmatively demonstrating the error on appeal, and must provide citations to supporting authorities. App.R. 16(A)(7) and Loc.R. 7(A)(6). See, also, Angle, supra; Frecska, supra. Our research of the issue reflects the fact that, absent specific circumstances indicating otherwise, an at-will employee in Ohio generally has no property interest in his or her continued employment. See Budinsky,
supra; see, generally, Balbach, supra. Moreover, while a number of cases regarding public employees and their right to revoke a resignation have been decided, such an entitlement does not appear to have been established with respect to non-public employees. Therefore, we cannot say that, as a matter of law, Ms. Roberts' employer was bound by her revocation of resignation.
 {¶ 27} Having set forth the analytical framework that guides our review of this case, we now determine whether the decision of the Review Commission in the instant case is unlawful, unreasonable, or against the manifest weight of the evidence. See R.C. 4141.282(H). Based upon a thorough examination of the record and the foregoing analysis, we find that the Review Commission's affirmation of the determination that Ms. Roberts quit work without just cause is supported by the evidence in the certified record. See Durgan, 110 Ohio App.3d at 551. The transcript from the hearing in front of the Review Commission contains Ms. Roberts' testimony as to the facts concerning her resignation and revocation of resignation. We do note that neither Ms. Roberts' employer nor an employer representative attended this hearing to provide additional testimony. Nevertheless, Ms. Roberts does not dispute, and clearly admits, that she submitted a letter of resignation to her employer. It also appears that Ms. Roberts was scheduled to work during the two-week notice period. Additionally, there is no evidence in the record to suggest that Ms. Roberts was discharged, much less that she was discharged without just cause.
 {¶ 28} In light of the foregoing, we cannot say that the Review Commission created such a manifest miscarriage of justice that the decision must be reversed. See Thompkins, 78 Ohio St.3d at 387. Accordingly, this Court finds that the Review Commission's decision to affirm the determination that Ms. Roberts quit without just cause is not against the manifest weight if the evidence. See R.C. 4141.282(H). Additionally, we find that the decision of the Review Commission is not unlawful and unreasonable. See Id.
 {¶ 29} Ms. Roberts briefly alludes to her belief that Ms. Stewart's acceptance of her resignation "appears to be purely retaliatory for [her] involvement in a collective action against [her employer] pending in federal court at that time." This Court observes that Ms. Roberts does not discuss the issue of retaliatory discharge beyond this bald assertion; she does not provide any evidence to establish the fact that her employer in fact engaged in a retaliatory discharge; and she does not cite any authorities to support her contention that retaliatory discharge occurred and that therefore she is eligible for unemployment benefits. As mentioned supra, an appellant has the burden to substantiate his or her arguments on appeal, including providing citations to authorities in support. See App.R. 16(A)(7) and Loc.R. 7(A)(6); Frecska, supra.
 {¶ 30} We have already found in this case that the Review Commission's decision is not unlawful, unreasonable, or against the manifest weight of the evidence. Because the Review Commission affirmed the director's redetermination which found that Ms. Roberts was not discharged but had instead quit, the issue of whether Ms. Roberts was discharged, whether in retaliation or not, is rendered moot. Therefore, this Court will not address this issue during this appeal. Akron v.Crouse, 9th Dist. No. 21308, 2003-Ohio-4029, at ¶ 6, citing Boncekv. Stewart, 9th Dist. No. 21054, 2002-Ohio-5778, at ¶ 10 (stating that, generally, courts will not resolve issues that are moot).
 {¶ 31} Because we have found that the decision of the Review Commission is not unlawful unreasonable, or against the manifest weight of the evidence, we must affirm the Review Commission's decision. See R.C. 4141.282(H). Accordingly, Ms. Roberts' sole assignment of error is overruled.
 III. {¶ 32} Ms. Roberts' sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
Whitmore, J. concurs.
[1] We note that the fact that Ms. Roberts tendered a letter of resignation is not disputed by either party on appeal.
[2] Under R.C. 4141.281(B), the director of the ODJFS may transfer an appeal to the Unemployment Compensation Review Commission.
[3] R.C. 4141.281(C)(3) provides that an interested party may file a request for review of the review commission's decision. The review commission is required to consider the request. R.C. 4141.281(C)(5).
[4] We find it helpful to discuss the manifest weight standard in the context of trial court judgments, which is the situation in which this standard of review is most commonly used.
[5] We also observe that copies of Ms. Roberts' resignation letter and the note she claims to have written to her employer regarding the revocation of her resignation, were not made part of the certified record. It is the appellant's burden on appeal to supply the record which demonstrates the error on appeal. Reese v. Village of Boston Heights
(Jan. 22, 1992), 9th Dist. No. 15156; see, also, App.R. 9(B). As Ms. Roberts' letter of resignation was not made part of the certified record, this Court, even if it had the authority to address this argument, could not address Ms. Roberts' contractual argument successfully.